NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

March 8, 2023

Roy J. Thibodaux, III, Esq.
Berkowitz, Lichtenstein, Kuritsky, Giasullo & Gross, LLC
75 Livingston Avenue, First Floor
Roseland, NJ 07068
*Counsel for Plaintiff*

William D. Wilson, Esq.
Mound, Cotton, Wollan & Greengrass, Esqs.
30A Vreeland Road
Florham Park, NJ 07932
*Counsel for Defendants*

### LETTER OPINION FILED WITH THE CLERK OF THE COURT

**Re:   Vose Avenue Apartments Urban Renewal, LLC v. Certain Underwriters at Lloyd's London, et al.
Civil Action No. 22-05691 (SDW) (JRA)**

Counsel:

Before this Court is Defendant Certain Underwriters at Lloyd's London ("Lloyd's"), Indian Harbor Insurance Company ("Indian Harbor"), QBE Specialty Insurance Company ("QBE"), Steadfast Insurance Company ("Steadfast"), General Security Indemnity Company of Arizona ("GSICA"), United Specialty Insurance Company ("United Specialty"), Lexington Insurance Company ("Lexington"), HDI Global Specialty SE ("HDI Global"), Old Republic Union Insurance Company ("Old Republic"), GeoVera Specialty Insurance Company ("GeoVera"), Transverse Specialty Insurance Company ("Transverse"), Landmark American Insurance Company ("Landmark"), and Westchester Surplus Lines Insurance Company's ("Westchester"), (collectively, "Defendants"), Motion to Compel Arbitration and Dismiss the matter pursuant to the Convention of the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§ 201–208, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*, and Federal Rule of Civil Procedure ("Rule") 12(b)(6). (D.E. 13-4 at 7–20.) This Court has jurisdiction pursuant to 9 U.S.C. §§ 202, 203, 205. Venue is proper pursuant to 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Rule

78. For the reasons discussed below, Defendants' Motion to Compel Arbitration and Dismiss the Complaint is **GRANTED**.

## I. BACKGROUND & PROCEDURAL HISTORY

Vose Avenue Apartments Urban Renewal, LLC ("Plaintiff" or "Vose") is a limited liability company based in New Jersey that owns property located at 57-65 South Orange Avenue, South Orange, New Jersey (the "Property"). (D.E. 1-1 ¶ 1.) Defendants are commercial insurance companies that sell commercial insurance policies and are "licensed and/or authorized to transact and conduct business in the State of New Jersey," and issued policies to Plaintiff for the Property (collectively, the "Policies"). (*Id.* ¶¶ 2–14.) Defendants Lloyd's, Indian Harbor, QBE, Steadfast, GSICA, United Specialty, Lexington, HDI Global, Old Republic, GeoVera, and Transverse issued policies under AmRise, LLC (collectively the "AmRise Policies") to Plaintiff, effective May 1, 2021 to November 1, 2022. (*Id.* ¶ 17.) The AmRise Policies "provide[d] for a 66.02% Quota Share of a total $37,866,095 Limit of Liability" (the "Liability Limit"). (*Id.* ¶ 18.) Westchester issued a policy to Plaintiff, effective from May 1, 2021 to November 2, 2022, that "provide[d] for a 21.8134% Quota Share of [the Liability Limit]" (the "Westchester Policy") (*Id.* ¶¶ 19–20.) Landmark issued a policy to Plaintiff, effective from August 4, 2021 to November 1, 2022, that "provide[d] for a 12.1644% proportionate share of [the Liability Limit]' (the "Landmark Policy"). (*Id.* ¶¶ 21–22.) The Policies collectively provided insurance coverage on the Property, which is a "271,000 sq/ft Residential Rental Project in South Orange, [New Jersey]," that has "110 [u]nits, 161,000 sq/ft of residential rentals, 88,000 sq/ft of parking, and 22,000 sq/ft of ground[-]floor retail space." (*Id.* ¶¶ 23–33.)

After Hurricane Ida "caused significant rainfall to occur at the [Property]" on or about September 1, 2021, "Plaintiffs promptly notified [D]efendants of the damage sustained to the [Property]" resulting from the storm, which included "cracked and heaved portions of the slab on grade in the parking lot of the [b]uilding." (*Id.* ¶¶ 34–36.) Defendants hired a third-party company, ProNet Group, Inc. ("ProNet"), to inspect and evaluate the damage to the Property. (*Id.* ¶ 38.) ProNet issued a damage report on December 17, 2021 (the "Report"). (*Id.* ¶ 39.) On March 22, 2022, Defendants denied Plaintiff's claim, provided the Report to Plaintiff, and gave Plaintiff an opportunity to provide any information it could that might dispute the information in the Report. (*Id.* ¶¶ 39–43.) Plaintiff provided additional information to Defendants and disputed information in the Report. (*Id.* ¶ 44.) ProNet issued a supplemental report on June 10, 2022 that confirmed its initial findings, and on August 12, 2022, Defendants again denied Plaintiff's claim. (*Id.* ¶¶ 45–47.)

Of import to this claim, the Policies contain an arbitration clause (the "Arbitration Clause"), which provides that "[a]ll matters in difference between the Insured and the Companies . . . in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal . . . ." (D.E. 1-4 at 41.) The Policies also contain a "Suit Against Companies" clause (the "SAC Clause"), which provides:

> No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this Policy, nor unless the same be commenced within twelve (12) months next after the date of the loss, provided however, that if under the laws of the jurisdiction in which the property is located such time limitation is invalid, then any such claims shall be void unless such action, suit or proceedings is commenced within the shortest limit of time permitted by the laws of such jurisdiction.

(*Id.* at 48.)

On September 23, 2022, Plaintiff filed a three-count Complaint in this Court requesting a declaratory judgment that declares that "coverage exists under the [Policies]" and confirming Defendants' obligations under the Policies (Count I); alleging breach of contract (Count II); and alleging breach of the duty of good faith and fair dealing (Count III). (D.E. 1 ¶¶ 50–78.) On September 30, 2022, Defendants filed the instant Motion to Compel Arbitration and Dismiss or Stay. (D.E. 13.) The parties thereafter completed timely briefing. (D.E. 19, 24.)

## II.    STANDARD OF REVIEW

The FAA was enacted to ensure the enforcement of private arbitration agreements. *See, e.g.*, *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344–45 (2011) (noting that "our cases place it beyond dispute that the FAA was designed to promote arbitration"); 9 U.S.C. § 2 (providing that written arbitration agreements "shall be valid, irrevocable, and enforceable"). "The FAA federalizes arbitration law and 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate . . . .'" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). Courts must refer parties to arbitration pursuant to an agreement to arbitrate "upon being satisfied that the issue involved in such suit or proceeding is referrable to arbitration under such an agreement." 9 U.S.C. § 3. To make such a determination, courts must examine whether (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citations omitted). Additionally, courts "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. [Courts] may also appoint arbitrators in accordance with the provisions of the agreement." 9 U.S.C. § 206.

Congress adopted the Convention—an international treaty that ensures that citizens of signatory countries can enforce arbitration agreements—and incorporated it into Chapter 2 of the FAA, 9 U.S.C. §§ 201–208 "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). In pertinent part, Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2. "There is . . . a strong policy in the federal courts favoring arbitration, especially in the context of international agreements," and, moreover, "if the parties [to a contract] agree that certain disputes will be submitted to arbitration and that the law of a particular jurisdiction will govern the resolution of those disputes, federal courts must effectuate that agreement." *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmBH*, 585 F.2d 39, 44 (3d Cir. 1978). Furthermore,

> Art. II (3) of the Convention says:
>
> The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

*Scherk*, 417 US. 506 at 526 (quoting 5 [1970] 21 U. S. T. (pt. 3) 2517, 2519, T. I. A. S. No. 6997).

To determine whether an agreement falls within the scope of the Convention, courts must examine whether "(1) there is an agreement in writing to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Razo v. Nordic Empress Shipping Ltd.*, 362 Fed. Appx. 243, 245 (3d Cir. 2009) (quoting *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002)). Consequently, "the Convention Act mandates arbitration if these requirements are met." *Id.* (citing *Francisco*, 293 F.3d at 273).

### III.   DISCUSSION

To begin this discussion, this Court would ordinarily determine whether the agreement to arbitrate falls within the scope of the Convention, thereby requiring this Court to mandate arbitration. *Id.* Here, however, Plaintiff does not seek to invalidate the Arbitration Clause in the Policies, and further does not argue that the Arbitration Clause does not fall within the scope of the Convention. (*See* generally D.E. 19.) Plaintiff instead contends that the SAC Clause in the Policies conflicts with the Arbitration Clause, therefore the suit should proceed in this Court rather than proceed via arbitration because "[c]ompelling arbitration under the instant circumstances would render the "SAC Clause] meaningless." (*Id.* at 11.) This argument is unavailing as it is premised on a flawed interpretation of the import and ramifications of the SAC Clause in relation to the Arbitration Clause.

The SAC Clause provides that for a party to enforce a provision of the Policies, the party must comply with the terms of the Policies and commence a "suit, [an] action, or [a] proceeding" within a twelve-month timeframe after a loss, or a timeframe that fits within the requirements of the jurisdiction in which the property is located. (D.E. 1-4 at 41.) The SAC Clause simply establishes compliance and timing requirements and does not negate the Arbitration Clause. *Cf. Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 554 (3d Cir. 2009) (discussing service-of-suit clauses, which are similar to the SAC Clause at issue here, and noting that "service-of-suit clauses do not negate accompanying arbitration clauses; indeed, they may complement arbitration clauses by establishing a judicial forum in which a party may enforce arbitration")). The plain language of the SAC Clause neither renders the Arbitration Clause ambiguous, nor conflicts with the Arbitration Clause. Importantly, the SAC Clause specifically denotes that it applies to a suit, an action, or a proceeding. (D.E. 1-4 at 41.) The Arbitration Tribunal required by the Arbitration Clause is a proceeding and, therefore, fits hand-in-hand with the SAC Clause.

Further, even if this Court were to assume, *arguendo*, that an Arbitration Tribunal were not a proceeding, the SAC Clause does not compel this Court to ignore the Arbitration Clause, and vice versa; these clauses exist simultaneously, and one does not render the other superfluous or ambiguous. These sophisticated parties both contracted for both the SAC Clause and the Arbitration Clause; thus, both accepted the existence and applicability of each Clause. The SAC Clause does not indicate that the parties may *only* resolve disputes through litigation; to interpret the Clause in that manner would distort its import and effect. The SAC Clause complements the Arbitration Clause and does not negate, trump, or replace it. Whether Plaintiff is contesting a matter covered or not covered by the Arbitration Clause, the SAC Clause merely delineates the compliance and timeframe requirements for the dispute. Plaintiff's claims implicate the valid Arbitration Clause as they fall within "[a]ll matters in difference between the Insured and the Companies . . . in relation to this insurance, including its formation and validity . . . ," which is the scope of that agreement. (D.E. 1-4 at 41.) Consequently, in accordance with the FAA, the Convention, and the explicit terms of the Policies, this matter must proceed to arbitration. This Court, therefore, grants Defendants' motion to refer the matter to arbitration and dismisses Plaintiff's Complaint without prejudice.

### IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Compel Arbitration and Dismiss the Complaint without prejudice and is **GRANTED**. An appropriate Order follows.

   /s/ Susan D. Wigenton   
SUSAN D. WIGENTON, U.S.D.J

Orig:  Clerk  
cc:    Parties  
       Jose R. Almonte, U.S.M.J.

5